## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| **VIA VADIS, LLC and** | § | |
| **AC TECHNOLOGIES, S.A.,** | § | |
| *Plaintiffs* | § | |
| | § | |
| **v.** | § | **CIVIL NO. 1:14-CV-00813-LY** |
| | § | |
| **AMAZON.COM, INC.,** | § | |
| *Defendant* | § | |

## O R D E R

Before the Court are Defendant Amazon's *Daubert* Motion to Exclude the Improper
Reasonable Royalty Analysis of Paul Benoit, filed September 17, 2021 (Dkt. 197), and the
associated response and reply briefs.[1] Having considered the written submissions, applicable law,
and arguments of the parties at a hearing on December 13, 2021, the Court grants the motion.

### I.   Background

Via Vadis, LLC and AC Technologies, S.A. ("Plaintiffs") are the owner and exclusive licensee,
respectively, of U.S. Patent No. RE40,521 (the "'521 Patent") for a data access and management
system. They accuse Defendant Amazon.com, Inc. ("Amazon") of direct and indirect infringement
of the '521 Patent through Amazon's software-as-a-service and related services "by supporting the
BitTorrent protocol, or other infringing peer to peer file distribution protocol, to transfer files and
other data between electronic devices, such as computers." Second Amended Complaint, Dkt. 112
¶ 17.

---

[1] On November 8, 2021, the District Court referred Defendant's motion to the undersigned Magistrate Judge
for resolution, pursuant to 28 U.S.C. § 636(b)(1)(A), Federal Rule of Civil Procedure 72, and Rule 1(c) of
Appendix C of the Local Rules of the United States District Court for the Western District of Texas.
Dkt. 215.

Amazon now moves the Court to exclude the opinion of Plaintiffs' damages expert, Paul Benoit. Amazon argues that Benoit improperly based his damages theory on revenue for Amazon's entire cloud storage service (Simple Storage Service, or "S3"), even though the non-accused features of that service account for more than 99.999 percent of its revenue. Dkt. 197 at 5. While the accused feature generated less than $250,000 since 2008, Benoit opines that the reasonable royalty is more than $30 million, a number Amazon calls "vastly inflated." *Id.* Plaintiffs oppose Amazon's motion.

## II.   Legal Standard

In *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 589 (1993), the Supreme Court held that trial judges must ensure that scientific testimony or evidence is not only relevant, but also reliable. Subsequently, Rule 702 of the Federal Rules of Evidence was amended to provide that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

The Rule 702 and *Daubert* analysis applies to all proposed expert testimony, including nonscientific "technical" and other "specialized knowledge." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999).

The Supreme Court has interpreted this rule as imposing a "gatekeeping role" on district courts, tasking them with "ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597. Under *Daubert*, expert testimony is

admissible only if the proponent demonstrates that (1) the expert is qualified; (2) the evidence is relevant; and (3) the evidence is reliable. *See Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998); *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 989 (5th Cir. 1997). The overarching focus of a *Daubert* inquiry is the "validity and thus evidentiary relevance and reliability—of the principles that underlie a proposed submission." *Watkins*, 121 F.3d at 989 (quoting *Daubert*, 509 U.S. at 594-95). The reliability prong mandates that expert opinion "be grounded in the methods and procedures of science and . . . be more than unsupported speculation or subjective belief." *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012) (citation omitted). "The relevance prong requires the proponent to demonstrate that the expert's reasoning or methodology can be properly applied to the facts in issue." *Id.* (internal quotation marks and citation omitted).

Notwithstanding the testing of an expert's qualification, reliability, and admissibility, "the rejection of expert testimony is the exception rather than the rule." FED. R. EVID. 702 advisory committee's note to 2000 amendment. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

The proponent of expert testimony bears the burden of establishing its reliability. *Sims v. Kia Motors of Am., Inc.*, 839 F.3d 393, 400 (5th Cir. 2016). Because the *Daubert* test focuses on the underlying theory on which the opinion is based, the proponent of expert testimony need not prove that the expert's testimony is correct, but rather that it is reliable. *Moore*, 151 F.3d at 276. It is not the court's role to "judge the expert conclusions themselves." *Williams v. Manitowoc Cranes, L.L.C.*, 898 F.3d 607, 623 (5th Cir. 2018).

> That the gatekeeping role of the judge is limited to excluding testimony based on unreliable principles and methods is particularly essential in the context of patent damages. This court has recognized

that questions regarding which facts are most relevant or reliable to calculating a reasonable royalty are "for the jury."

*Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1315 (Fed. Cir. 2014), *overruled on other grounds by Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015); *see also Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1296 (Fed. Cir. 2015) ("But where the methodology is reasonable and its data or evidence are sufficiently tied to the facts of the case, the gatekeeping role of the court is satisfied, and the inquiry on the correctness of the methodology and of the results produced thereunder belongs to the factfinder.").

### III.   Analysis

Amazon contends that Benoit's damages analysis has several errors, including the following:

1. There is no factual support for Benoit's assertion that 7 percent of Amazon's S3 revenue was "at risk" without the accused feature, and that Amazon would have lost a specific percentage of the "at risk" revenue.

2. Benoit violates the entire market value rule by basing his damages analysis on Amazon's S3 revenue as opposed to the revenue associated with the accused BitTorrent interface.

3. The analysis used to split the alleged incremental profits between the parties has been rejected by the Federal Circuit Court of Appeals as unreliable.

4. Benoit failed to do any apportionment between the allegedly patented and unpatented features of BitTorrent.

Plaintiffs respond that Benoit "has been qualified as a damages expert numerous times, and his analysis uses a hypothetical negotiation, working through each of the relevant *Georgia-Pacific*[2] factors to estimate a reasonable royalty, which has consistently been held to be a reliable method

---

[2] *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970).

by the Federal Circuit." Dkt. 206 at 8 (citing *Summit 6*, 802 F.3d at 1298; *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 854 (Fed. Cir. 2010)).

## A.  Apportionment Arguments and Profit Split

Plaintiffs contend that Amazon's motion should be denied because each of its challenges goes to the weight afforded Benoit's testimony, not its admissibility. The Court agrees with respect to Amazon's challenges listed above as 1, 3, and 4, i.e., the 7 percent "at risk" figure, profit split, and apportionment. Each of these arguments is tied to questions of fact in this case that go to the weight accorded to Benoit's opinions, not to the correctness of his methodology or the admissibility of his opinions under *Daubert*. Accordingly, questions about the factual support for Benoit's methodology would be for Amazon to raise on cross-examination. *See, e.g.*, *Motorola*, 757 F.3d at 1319-20 ("Determinations on admissibility should not supplant the adversarial process; 'shaky' expert testimony may be admissible, assailable by its opponent through cross-examination.") (citation omitted); *Clinicomp Int'l, Inc. v. Athenahealth, Inc.*, 507 F. Supp. 3d 774, 779 (W.D. Tex. 2020) ("Any questions related to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration. [Amazon] may explore these issues by cross-examination.").

## B.  Whether Plaintiff's Expert Violated the Entire Market Value Rule

The Court reaches a different conclusion with respect to Amazon's second challenge.

### 1.  Reasonable Royalty Patent Damages and the Entire Market Value Rule

In a suit for patent infringement, a successful plaintiff is entitled to "damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court." 35 U.S.C. § 284. A reasonable royalty must be based on the smallest salable patent-practicing unit.

*Commonwealth Sci. & Indus. Rsch. Organisation v. Cisco Sys., Inc.*, 809 F.3d 1295, 1302 (Fed. Cir. 2015) ("Fundamentally, the smallest salable patent-practicing unit principle states that a damages model cannot reliably apportion from a royalty base without that base being the smallest salable patent-practicing unit."). Damages may be based on the entire market value of an accused product "only where the patented feature creates the basis for customer demand or substantially create[s] the value of the component parts." *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1318 (Fed. Cir. 2011) (internal quotation marks omitted).

The Federal Circuit Court of Appeals recently summarized the derivation of the entire market rule as follows:

> "[T]he patentee must in every case give evidence tending to separate or apportion . . . the patentee's damages between the patented feature and the unpatented features . . . ." *LaserDynamics, Inc. v. Quanta Comput., Inc.*, 694 F.3d 51, 67 (Fed. Cir. 2012) (cleaned up). Accordingly, where a royalty is at issue, "[n]o matter what the form of the royalty, a patentee must take care to seek only those damages attributable to the infringing features." *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1326 (Fed. Cir. 2014). And "where multi-component products are involved, the governing rule is that the ultimate combination of royalty base and royalty rate must reflect the value attributable to the infringing features of the product, and no more." *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014). In other words, "[w]hen the accused infringing products have both patented and unpatented features, measuring this value requires a determination of the value added by such features." *Id.* It follows that "a patentee may assess damages based on the entire market value of the accused product only where the patented feature creates the basis for customer demand or substantially creates the value of the component parts." *VirnetX*, 767 F.3d at 1326 (cleaned up).

*Omega Pats., LLC v. CalAmp Corp.*, 13 F.4th 1361, 1376 (Fed. Cir. 2021); *see also Commonwealth*, 809 F.3d at 1302 ("Under the entire market value rule, if a party can prove that the patented invention drives demand for the accused end product, it can rely on the end product's

entire market value as the royalty base."); *Luhn v. Scott*, No. A-04-CA-521-LY, 2007 WL 9700685, at *12 (W.D. Tex. Sept. 28, 2007) (stating that, under the entire market value rule, "a patentee may recover damages based on the value of an entire apparatus containing several features, although only one feature is patented, when the feature patented constitutes the basis for customer demand"), *aff'd*, 283 F. App'x 813 (Fed. Cir. 2008).

### 2. Benoit's Analysis Is Based on Amazon's Estimated U.S. S3 Sales

In his report, Benoit states that Amazon had estimated and forecasted U.S. S3 revenue of $22 billion from 2008 until expiration of the '521 Patent in 2022. Dkt. 197 at 9; Benoit Expert Report, Dkt. 207-1 (sealed) ¶¶ 43-44, 93. Benoit then applies recent data that 7 percent of Amazon's S3 customers are software developers to estimate that 7 percent of S3 revenue was "at risk" but for Amazon offering a BitTorrent interface. Dkt. 197 at 9-10 (citing Dkt. 207-1 (sealed) ¶ 44). Based on estimates of Amazon's market share, Benoit concludes that Amazon would have kept 43.1 percent of its customers without BitTorrent and calculates Amazon's incremental profit from the alleged infringement to be $70.9 million. *See* Dkt. 197 at 19; Dkt. 207-1 (sealed) ¶ 104. After allocating the profit between the parties, Benoit concludes that Amazon would have paid a lump-sum royalty to Plaintiffs of $33.8 million. Dkt. 207-1 (sealed) ¶ 126; *see also* Dkt. 197 at 5 (stating that Benoit "opines that Amazon should have to pay Plaintiffs over 30 million dollars").

In her rebuttal report, Amazon expert Lauren Kindler estimated total S3 revenues due to BitTorrent for the same 2008 to 2022 time frame to be $223,498. Dkt. 198-1 (sealed) ¶ 33; *see also* Dkt. 197 at 5, 13 (stating that the BitTorrent interface "generated less than $250,000 in revenue" over the 13-year damages period.[3]

---

[3] Kindler's entire rebuttal expert report, including how she calculated the alternate reasonable royalty of $224,000 to $350,000 cited in Plaintiffs' presentation at the oral hearing, is not of record.

### 3.   Plaintiff's Expert Violates the Entire Market Value Rule

Amazon contends that Benoit violates the entire market value rule by basing his damages analysis on Amazon's S3 revenue, "rather than looking to the revenue Amazon received or projected to receive from the usage of the BitTorrent interface." Dkt. 209 at 9. Plaintiffs respond that:

> Mr. Benoit has articulated evidence reflecting the importance of price as a driver of sales of S3 services, and thus the economic footprint of the invention would not only reflect revenue generated from data transmitted via BitTorrent, but also the ability to attract customers to Amazon's S3 by reducing the effective price of the service.

Dkt. 206 at 16 (internal citation omitted). Plaintiffs' single sentence concerning "the importance of price" to Amazon's S3 customers falls far short of meeting its burden to establish that BitTorrent "was the sole driver of consumer demand" for Amazon's entire cloud storage service. *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 904 F.3d 965, 980 (Fed. Cir. 2018).

Plaintiffs further argue that Benoit's analysis "appropriately apportions the revenues attributable to BitTorrent." Dkt. 206 at 16. Thus, Plaintiffs aver, Benoit "does not rely on the total revenues of S3 to determine the royalty rate or calculate his royalty base." *Id.* at 18. Amazon characterizes Plaintiffs' latter statement as "demonstrably false, as the total revenue of S3 is the starting point for all of his calculations." Dkt. 209 at 11.

The excerpts of record from Benoit's expert report and deposition transcript do not explicitly state what Benoit considered to be the royalty base. They clearly show, however, that Benoit began his reasonable royalty analysis with estimated U.S. S3 revenues, which he apportioned to reflect his calculations of the revenue "at risk" without use of the '521 Patent and Amazon's market share. The heart of the parties' disagreement thus is whether the entire market rule is implicated by

starting the royalty calculation with total S3 revenues – notwithstanding subsequent apportionment – rather than the market value for the BitTorrent service. Dkt. 209 at 11. On the facts of this case, the Court finds that it is.

In *LaserDynamics*, the Federal Circuit reaffirmed that

> in any case involving multi-component products, patentees may not calculate damages based on sales of the entire product, as opposed to the smallest salable patent-practicing unit, without showing that the demand for the entire product is attributable to the patented feature.
>
> Regardless of the chosen royalty rate, one way in which the error of an improperly admitted entire market value rule theory manifests itself is in the disclosure of the revenues earned by the accused infringer associated with a complete product rather than the patented component only. . . . Admission of such overall revenues, which have no demonstrated correlation to the value of the patented feature alone, only serve to make a patentee's proffered damages amount appear modest by comparison, and to artificially inflate the jury's damages calculation beyond that which is "adequate to compensate for the infringement."

694 F.3d at 67-68 (quoting *Uniloc*, 632 F.3d at 1320). The Federal Circuit subsequently stated the following regarding the starting point for a reasonable royalty calculation:

> Where the entire value of a machine as a marketable article is properly and legally attributable to the patented feature, the damages owed to the patentee may be calculated by reference to that value. Where it is not, however, courts must insist on a more realistic starting point for the royalty calculations by juries—often, the smallest salable unit and, at times, even less.

*Ericsson*, 773 F.3d at 1227 (cleaned up).

Plaintiffs correctly argue that apportionment may be addressed "by careful selection of the royalty base to reflect the value added by the patented feature [or] . . . by adjustment of the royalty rate so as to discount the value of a product's non-patented features; or by a combination thereof." Dkt. 206 at 16-17 (quoting *Exmark Mfg. Co. v. Briggs & Stratton Power Prods. Grp., LLC*, 879

F.3d 1332, 1348 (Fed. Cir. 2018)). This case is distinguishable from *Exmark*, however, where using sales of the accused lawn mower as the royalty base was "particularly appropriate . . . because the asserted claim is, in fact, directed to the lawn mower as a whole. . . . There is no unpatented or non-infringing feature of the product." *Exmark*, 879 F.3d at 1348. Although using an entire product as a royalty base and apportioning through the royalty rate "is an acceptable methodology," *id.*, Plaintiffs have not met their burden to establish that Amazon's entire S3 sales are an appropriate base in this case.

Here, Benoit's reasonable royalty calculation discloses Amazon's estimated revenues associated with its entire S3 cloud storage services rather than the BitTorrent interface only. *LaserDynamics*, 694 F.3d at 68. A hypothetical *ex ante* negotiation "necessarily involves an element of approximation and uncertainty," *Interactive Pictures Corp. v. Infinite Pictures, Inc.*, 274 F.3d 1371, 1385 (Fed. Cir. 2001) (citation omitted), and the parties did not know in 2006 what the extent of BitTorrent's use by Amazon's S3 customers would prove to be. Nonetheless, where the accused feature generated less than $250,000 in revenue over 13 years, the court "must insist on a more realistic starting point for the royalty calculations" than $22 billion. *Ericsson*, 773 F.3d at 1227; *see also Power Integrations*, 904 F.3d at 977 ("We have cautioned against reliance on use of the entire market value of a multi-component product that includes a patented component because it 'cannot help but skew the damages horizon for the jury, regardless of the contribution of the patented component to this revenue.'") (quoting *Uniloc*, 632 F.3d at 1320).

Because Benoit's opinion violates the entire market value rule, it is neither reliable nor relevant to calculation of a reasonable royalty damages award in this case and therefore should be excluded from trial under *Daubert*.

10

### IV.   Conclusion

For the foregoing reasons, Defendant Amazon's *Daubert* Motion to Exclude the Improper Reasonable Royalty Analysis of Paul Benoit (Dkt. 197) is **GRANTED**.

**SIGNED** on January 3, 2022.

_____
SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE

11